Opinion issued January 13, 2011

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00662-CV

———————————

Randall P. Crane, Appellant

V.

Rimkus
Consulting Group, Inc., Appellee



 



 

On Appeal from the County Civil Court at Law No. 1

Harris County, Texas



Trial Court Case No. 929428

 



 

MEMORANDUM OPINION

          Appellee,
Rimkus Consulting Group, Inc. (“Rimkus”), sued appellant, Randall Crane, for
breach of contract, suit on an account, and quantum meruit, arising out of
Crane’s failure to pay Rimkus for litigation evaluation services.  The trial court rendered summary judgment in
favor of Rimkus on its breach of contract claim.[1]  In three issues on appeal, Crane contends
that the trial court erred in rendering summary judgment because (1) fact
issues exist regarding whether Rimkus materially breached the contract and
whether there was a failure of consideration; (2) fact issues exist regarding
the reasonableness of Rimkus’s attorney’s fees and its professional services fees;
and (3) Rimkus’s summary judgment affidavits describing the reasonableness of
its services fees and attorney’s fees were conclusory and not proper summary-judgment
evidence.

          We
affirm.

Background

          In
June 2006, Crane, who was investigating the potential causes of a fatal one-car
accident, contacted Rimkus for “litigation support consulting services” in
connection with the evaluation of this accident.  After meeting with Crane and discussing the
assignment, Rimkus mailed Crane a “Confirmation of Assignment” letter on June
26, 2006, along with a copy of its “Terms and Conditions” and a fee schedule
for the services offered.  The letter
stated, in bold, that Rimkus would invoice Crane “each month for services
provided and expenses incurred during the preceding month.”  On July 6, 2006, Crane, per Rimkus’s request,
signed and dated a copy of the Confirmation of Assignment letter and returned
it to Rimkus.

          The
Terms and Conditions included a similar provision, stating that Rimkus would
invoice Crane each month for the services and expenses incurred during the
previous month.  This document specified
the hourly rate for each category of Rimkus employees that could potentially
work on the project, such as consultants and technical assistants, and set out
the costs for “fixed rate expenses,” such as evidence storage, photocopying, and
freight charges.  The Terms and
Conditions included the following merger clause:

The Terms and Conditions and
the Engagement Letter shall form the entire agreement between the parties
hereto with respect to the subject matter. 
No oral representations of any officer, agent, or employee of [Rimkus]
or [Crane], either before or after execution of this agreement, shall affect or
modify any obligation of either party hereunder.  [Crane] agrees that [he] has not been induced
to enter into this agreement by any representations, statements or warranties
of [Rimkus] or any officer, agent or employee of [Rimkus], other than those
herein expressed.

 

Neither the confirmation letter nor the Terms and
Conditions contained a provision stating the specific services that Rimkus
agreed to provide for Crane or any special billing conditions, such as a condition
that Rimkus would charge Crane only if it determined that third-party negligence
likely caused the accident.

          On
September 13, 2006, Rimkus mailed Crane an invoice for $3,463.75 for services
rendered after June 20, 2006, the day Crane first met with Rimkus
representatives.  The invoice described
the specific services performed, such as “inspect, measure, and photograph
vehicle in Harlingen, TX,” and stated the title of the employee performing the
services, the amount of time expended, the hourly rate, and the total cost for
each day’s work.  Rimkus employees spent
a total of 20.25 hours on Crane’s project, for a total fee amount of $3,269.75,
plus $194 in expenses.

          After
Crane failed to pay the invoice, Rimkus sued for breach of contract, suit on an
account, and quantum meruit.  As
affirmative defenses, Crane asserted prior material breach of the contract by
Rimkus, negligent misrepresentation, fraud, and failure of consideration.

          Rimkus
moved for traditional summary judgment on its breach of contract claim.  As summary-judgment evidence, Rimkus attached
the Confirmation of Assignment letter, the Terms and Conditions, the invoice,
the affidavit of Ralph Graham, Rimkus’s Senior Vice President, and the
affidavit of Richard Judge, the primary attorney for Rimkus.  Rimkus argued that it provided “expert
witness and consulting services” to Crane and although Crane accepted these
services, he refused to pay the outstanding invoice amount.  Rimkus sought as damages the amount of the
debt, $3,463.75, and $8,269.25 in attorney’s fees.

          Graham
averred that Crane requested that Rimkus “evaluate a vehicle accident where the
driver of a Toyota 4-Runner left the roadway, entered an irrigation ditch and
crashed, and died due to injuries from the crash.”  According to Graham, although Rimkus “performed
its contractual obligations under the Terms & Conditions” and Crane
promised to pay Rimkus for the “reasonable prices charged to provide the
services,” Crane ultimately refused to pay Rimkus for the services rendered.

          Judge
averred that the amount sought by Rimkus for attorney’s fees, $8,269.25, was
reasonable and necessary.  He stated that
his firm agreed to a reduced hourly rate of $150 for the two attorneys working
on the case, and that the two legal assistants had hourly rates of $85.  Judge stated that he was familiar with the
hourly rates for Harris County, and he opined that these rates were
reasonable.  He also specified the number
of hours that each attorney and legal assistant worked on the case, and
described all of the actions taken by the firm on behalf of Rimkus.  Judge noted, “[t]he majority of our billable
hours have been spent in response to the various actions and filings by the
Defendant in this litigation.”  Finally, he
listed the Arthur Andersen v. Perry Equipment
Corp. factors for determining the reasonableness and necessity of
attorney’s fees, and stated that he considered these factors when concluding
that the fees sought were reasonable and necessary.

          In
response, Crane argued that the trial court should deny Rimkus’s summary
judgment motion because, although Rimkus had pleaded that it had fully
performed under the contract and that “all conditions precedent to [Rimkus’s]
recovery have occurred,” Rimkus “failed to establish the existence of a liable
third party [in the car accident] which was a condition precedent to incurring
any indebtedness by defendant” and it also “fail[ed] to investigate the major
area of concern, i.e., the existence of a manufacturing or design defect.”  Crane also argued that Rimkus materially
breached the contract by failing to provide monthly invoices “so that [Crane]
could have monitored the cost being incurred.” 
Crane further stated that Rimkus failed to provide either a report of
its findings or copies of evidence supporting its findings.  Additionally, he argued that Graham’s
affidavit was conclusory, because it only stated factual conclusions and not the
underlying facts.  According to Crane,
the affidavit was also defective because it did not demonstrate that the time
spent on the services or the amount that Rimkus charged for the services was
reasonable and necessary.  Crane also
attacked Judge’s affidavit as conclusory because it “fail[ed] to break the
hourly charges down so [that] the reasonableness of the time incurred can be
determined.”

          As
summary-judgment evidence, Crane attached his own affidavit.  Crane averred that, because the car involved
in the accident was an SUV, he contacted Rimkus to perform a “cursory
inspection” of the vehicle for manufacturing or design defects.  Crane “made clear” to Rimkus that he was not
willing to incur expenses unless Rimkus could demonstrate that a third party’s
negligence caused the accident, and a Rimkus representative agreed to
investigate only on an “exploratory basis.” 
The employee stated that Crane needed to sign a fee agreement so that the
employee could charge his time against a document.  Crane signed the agreement “after a good deal
of the investigation had already been done.” 
Crane averred that, aside from his initial visit and one phone call, he
had no contact with Rimkus until he received the invoice in September.  According to Crane, if Rimkus had sent a bill
earlier, Crane “would have been able to verify the billing agreement with
[Rimkus] and cut off further work when it was learned [Rimkus] expected to be
paid for its cursory investigation.”  Crane
averred that he never would have entered into the contract if Rimkus had not
represented that Crane would need to pay only if Rimkus determined that a
viable cause of action existed.

          Crane
further averred that Rimkus’s charges for its services were “neither reasonable
nor customary.”  Crane based this
assessment on his experience with “a great many experts in the area of accident
reconstruction,” and he opined that Rimkus’s charges were “repetitive, inflated,
and unnecessary.”  Crane also averred
that Rimkus’s invoice reflected that it never performed the work that Crane
requested because Rimkus never investigated a manufacturing or design
defect.  Finally, Crane averred that,
“based on years of experience in practicing law,” the charges for attorney’s
fees were neither reasonable nor necessary. 
Crane opined that, in “an efficiently managed law office,” an attorney’s
staff usually performs collection work, and thus an attorney’s spending 49.5
hours on the case is not reasonable and necessary.  Crane also averred that Judge’s statements
regarding the reasonableness and necessity of the attorney’s fees were
conclusory and that Judge offered no factual support for his determination.

          Rimkus
objected to nearly every part of Crane’s affidavit and moved to strike it as
summary-judgment evidence.  Rimkus
primarily objected to Crane’s statements regarding alleged agreements by Rimkus
to charge Crane for its services only if its preliminary investigation revealed
that a third party was liable for the accident and to focus on a manufacturing
or design defect.  According to Rimkus, evidence
of any such agreements violated the parol evidence rule because these alleged
terms were not contained in the written contract.  Rimkus also objected to Crane’s statement
regarding the reasonableness of Rimkus’s professional services charges on the
ground that Crane submitted no evidence that he was qualified to provide
accident reconstruction services or qualified to render an opinion on the
reasonableness of those services.  Rimkus
further objected to Crane’s challenge to Rimkus’s attorney’s fees because
Crane’s affidavit failed to show that Crane had any experience or knowledge of attorney’s
fees in Harris County, and Crane offered no controverting evidence on what fee amount
would be reasonable and necessary for this case.

          After
the trial court sustained most of Rimkus’s objections, the entirety of Crane’s summary
judgment affidavit read as follows:

My name is Randall P. Crane,
I am over the age of twenty-one years of age[.] 
I have never been convicted of a felony or a crime involving moral
turpitude and I am in all ways capable of making this affidavit.  I am the defendant in this case and I have
personal knowledge of the matters stated herein and the same are true and
correct.

 

I am a licensed attorney in
the State of Texas and have been since my admission to the bar in 1972.  I have maintained a general practice of law
since that time and am familiar with the practice of law in various areas
including that of contracts and debt collection.

 

In June of 2006 the
undersigned was contacted by Leonard Guillen whose son had recently been killed
in a one vehicle automobile accident. 
Mr. Guillen asked this office to investigate the circumstances
surrounding this accident.  An initial
investigation of the accident was performed which included a review of the
accident report, a site inspection, photographing, etc.  It did not appear there was any third party
negligence involved and therefore, the potential client was never asked to sign
an employment contract.

 

. . . .

 

The contract [with Rimkus]
included a material representation that billing for work done will be on a
monthly basis.

 

. . . .

 

The only other summary-judgment evidence that Crane
provided was the Confirmation of Assignment letter, the Terms and Conditions,
and the invoice from Rimkus.

          The
trial court rendered summary judgment in favor of Rimkus, and awarded it the
amount of the invoice and the full amount of attorney’s fees that it had requested.  After Crane’s motion for new trial was
overruled by operation of law, this appeal followed.

Standard of Review

          We
review de novo the trial court’s ruling on a summary judgment motion.  Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  A party seeking recovery
may, at any time after the adverse party has answered or appeared, move for
summary judgment on its own claim.  Tex. R. Civ. P. 166a(a).  The movant bears the burden of establishing
that no genuine issue of material fact exists and that it is therefore entitled
to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When a plaintiff moves for summary judgment,
it must prove that it is entitled to summary judgment as a matter of law on
each element of its cause of action.  Harris County v. Walsweer, 930 S.W.2d
659, 663 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (citing MMP, Ltd. v. Jones, 710 S.W.2d 59, 60
(Tex. 1986) (per curiam)).  If the
nonmovant relies upon an affirmative defense to defeat summary judgment, he
must present summary judgment evidence sufficient to raise a fact issue on each
element of the affirmative defense.  Brownlee v. Brownlee, 665 S.W.2d 111,
112 (Tex. 1984).  A genuine issue of material
fact exists if the nonmovant produces more than a scintilla of probative
evidence regarding a particular element. 
See Ford Motor Co. v. Ridgway,
135 S.W.3d 598, 600 (Tex. 2004); see also
Forbes Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003)
(“More than a scintilla of evidence exists if it would allow reasonable and
fair minded people to differ in their conclusions.”).  In determining if the nonmovant raised a fact
issue, we review the evidence in the light most favorable to the nonmovant,
crediting favorable evidence if reasonable jurors could and disregarding
contrary evidence unless reasonable jurors could not.  Fielding,
289 S.W.3d at 848 (citing City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)).

          When
the trial court sustains objections to a party’s summary judgment evidence and
the party does not attack the merits of that ruling on appeal, we may not
consider the stricken evidence when reviewing the summary judgment.  See Little
v. Needham, 236 S.W.3d 328, 331 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (citing Inglish v. Prudential Ins.
Co. of Am., 928 S.W.2d 702, 706 (Tex. App.—Houston [1st Dist.] 1996, writ
denied)).

Prior Material Breach by Rimkus

          In
his first issue, Crane contends that the trial court erred in rendering summary
judgment on Rimkus’s breach of contract claim because Crane raised a fact issue
on his affirmative defenses of prior material breach of the contract by Rimkus
and failure of consideration.

          A
breach of contract occurs when a party to the contract fails to perform an act
that it has expressly or impliedly promised to perform.  Case
Corp. v. Hi-Class Bus. Sys. of Am., Inc., 184 S.W.3d 760, 769–70 (Tex.
App.—Dallas 2005, pet. denied).  If a
party commits a material breach of the contract, that breach discharges or
excuses the other party from further performance.  Mustang
Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004) (per
curiam).  Materiality of a breach is
generally a question for the fact-finder; however, the court can determine
materiality and the resulting unenforceability of the agreement as a matter of
law.  See
Continental Dredging, Inc. v. De-Kaizered, Inc., 120 S.W.3d 380, 394–95
(Tex. App.—Texarkana 2003, pet. denied); see
also Mustang Pipeline, 134 S.W.3d at 200 (“Based on this evidence, we hold
that as a matter of law Driver committed a material breach.”).

          In Mustang Pipeline, the Texas Supreme
Court adopted section 241 of the Restatement (Second) of Contracts, which lists
five factors “significant in determining whether a failure to perform [a
contractual obligation] is material.”  Mustang Pipeline, 134 S.W.3d at
199.  The factors are:

(a)  The extent to which the
injured party will be deprived of the benefit which he reasonably expected;

 

(b) The extent to which the
injured party can be adequately compensated for the part of that benefit of
which he will be deprived;

 

(c)  The extent to which the
party failing to perform or offer to perform will suffer forfeiture;

 

(d) The likelihood that the
party failing to perform or offer to perform will cure his failure, taking
account of the circumstances including any reasonable assurances;

 

(e)  The extent to which the
behavior of the party failing to perform or to offer to perform comports with
standards of good faith and fair dealing.

 

Id. (citing Restatement (Second) of Contracts
§ 241 (1981)).  Restatement section
242 states two additional factors important in determining whether a party’s
contractual duties are discharged due to a material breach:

(1) The extent to which it
reasonably appears to the injured party that delay may prevent or hinder him in
making reasonable substitute arrangements;

 

(2) The extent to which the
agreement provides for performance without delay, but a material failure to
perform or to offer to perform on a stated day does not of itself discharge the
other party’s remaining duties unless the circumstances, including the language
of the agreement, indicate that performance or an offer to perform by that day
is important.

 

Id. (citing Restatement (Second) of Contracts
§ 242 (1981)).

          As
summary-judgment evidence, both Rimkus and Crane attached the Confirmation of
Assignment letter, the Terms and Conditions, and the unpaid invoice.  It is undisputed that the confirmation letter
and the Terms and Conditions both state that Rimkus will invoice Crane each
month for “services provided and expenses incurred during the previous
month.”  It is also undisputed that
Rimkus did not invoice Crane until September 13, 2006, nearly three months
after Rimkus began work.  Crane contends
that “[t]he timeliness of invoices was a material factor because if billing had
occurred as agreed, [Crane] would have immediately been aware that a
misunderstanding had occurred as to the payment for and scope of the project
and would have been able to stop work.”

          In
his summary judgment affidavit, Crane averred that he had made it clear to
Rimkus that he was not willing to incur expenses unless Rimkus could determine
that the negligence of a third party played a role in the accident that Crane
was investigating.  According to Crane,
Rimkus agreed to investigate on an “exploratory basis” only, and it only had
Crane sign a fee agreement so Rimkus’s consultant could charge his time against
a document.  The trial court sustained
Rimkus’s objections and struck these statements from Crane’s affidavit on the
ground that the statements violated the parol evidence rule.  Because Crane does not challenge the
propriety of this ruling, we cannot consider this evidence in determining
whether Crane raised a fact issue on Rimkus’s alleged material breach.[2]  See
Little, 236 S.W.3d at 331.

          We previously
addressed whether a party’s alleged failure to bill monthly, contrary to the
parties’ fee agreement, constitutes a material breach as a matter of law under Mustang Pipeline.  See Williams
v. Jackson, No. 01-07-00850-CV, 2008 WL 4837484, at *3–4 (Tex. App.—Houston
[1st Dist.] Nov. 6, 2008, no pet.) (mem. op.). 
We focused on Restatement section 242, which “addresses the implications
of time deadlines stated in a contract for deciding whether [an] alleged breach
of a deadline by the party seeking enforcement of a
contract . . . will discharge the other party to the
contract . . . .”  Id. at *4.  Under section 242, “‘the extent to which the
agreement provides for performance without delay’ is a circumstance that
affects materiality of lack of timely performance.”  Id.
(citing Mustang Pipeline, 134 S.W.3d
at 199).  Section 242 also states that “a
material failure to perform . . . on a stated day does not
of itself discharge the other party’s remaining duties unless the
circumstances, including the language of the agreement, indicate that
performance . . . by that day is important.”  Id.
(citing Restatement (Second) of
Contracts § 242).  We noted
that, unlike in Mustang Pipeline, the
contract between Williams and Jackson did not “impose a duty of compliance
[with the billing provision] on either a stated day or without delay.”  Id.  Similarly, nothing in the fee agreement
suggested that monthly billing was “of the essence,” such that it “serve[d] as
a predicate to compliance by Williams with his duty to pay Jackson.”  Id.  We thus concluded that the contract did not
support Williams’ argument that Jackson’s failure to comply with the billing
requirements discharged Williams from his duty to pay.  Id.

          Here,
the Terms and Conditions do not “impose a duty of compliance” on Rimkus to bill
either on a stated day or without delay. 
Also, nothing in the Terms and Conditions or the Confirmation of
Assignment letter indicates that strict monthly billing is “of the essence,”
such that Rimkus’s failure to comply would discharge Crane from his duty to pay
Rimkus for its services.  Crane offered
no admissible evidence to suggest otherwise. 
We conclude that Crane failed to raise a fact issue on whether Rimkus
materially breached the contract and on whether that alleged material breach
discharged Crane from future performance.[3]  We therefore hold that the trial court
correctly rendered summary judgment in favor of Rimkus.

          We
overrule Crane’s first issue.

 

Reasonableness of Professional Services Fees

          In
his second issue, Crane contends that the trial court erred in rendering
summary judgment in favor of Rimkus because he raised fact issues concerning
the reasonableness of Rimkus’s professional services fees.

In his summary judgment response,
Crane argued that his “affirmative defense[s] include[] the denial of the reasonableness
of the time charged [by Rimkus] for the various elements of work allegedly
undertaken and the necessity of the work performed.”  As this is an affirmative defense, Crane
bears the burden to raise a fact issue on each element of this contention to
defeat summary judgment in favor of Rimkus. 
See Brownlee, 665 S.W.2d at
112.

The trial court struck the portion
of Crane’s summary judgment affidavit in which he disputed the reasonableness
of Rimkus’s services charges on the ground that Crane failed to establish his
qualifications to provide this testimony. 
Because Crane does not challenge the propriety of this ruling on appeal,
we cannot consider this evidence when reviewing the trial court’s summary
judgment.  See Little, 236 S.W.3d at 331. 
Crane presented no other summary judgment evidence challenging the
reasonableness of Rimkus’s professional services charges.  We conclude that Crane failed to raise a fact
issue on the reasonableness of Rimkus’s services charges, and therefore the
trial court properly rendered summary judgment on Rimkus’s breach of contract
claim.

Reasonableness of Attorney’s Fees

          Crane
also contends, in his second issue, that the trial court erred in rendering
summary judgment in favor of Rimkus because he raised fact issues concerning
the reasonableness of attorney’s fees.

Usually, the determination of the
amount to be awarded as reasonable attorney’s fees is a question of fact to be
determined by the fact-finder and the award must be supported by competent
evidence.  See Volume Millwork, Inc. v. W. Houston Airport Corp., 218 S.W.3d
722, 735 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); Beere v. Duren, 985 S.W.2d 243, 249 (Tex. App.—Beaumont 1999, pet.
denied).  The general rule is that
testimony of an interested witness, such as a party to the suit, though not
contradicted, only raises a fact issue on the amount of attorney’s fees to be
determined by the jury.[4]  Ragsdale
v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990).  An exception to this rule exists, however,
when the “testimony of an interested witness is not contradicted by any other
witness, or attendant circumstances, and the same is clear, direct and
positive, and free from contradiction, inaccuracies, and circumstances tending
to cast suspicion thereon.”  Id.  Such testimony “is taken as true, as a matter
of law.”  Id.; see also Hunsucker v.
Fustok, 238 S.W.3d 421, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.)
(holding that trial court abused its discretion in awarding no appellate
attorney’s fees “in the face of uncontroverted evidence of the fees incurred
and anticipated”).

          Crane
contends that he controverted the reasonableness of Rimkus’s attorney’s fees in
his summary judgment affidavit, in which he stated his qualifications for
disputing the fee amount requested. 
Crane ignores, however, the trial court’s ruling in which it sustained
Rimkus’s objections to Crane’s affidavit and struck the two paragraphs in which
Crane disputed the reasonableness and necessity of Rimkus’s attorney’s
fees.  Because Crane does not challenge
the propriety of this ruling on appeal, we cannot consider this evidence when
reviewing the summary judgment.  See Little, 236 S.W.3d at 331.

          Crane
presented no other summary judgment evidence to controvert these fees.  We conclude that Rimkus’s attorney’s fees
evidence is “clear, direct and positive, and not contradicted by any other
witness or attendant circumstances, and there is nothing to indicate
otherwise.”  Ragsdale, 801 S.W.2d at 882. 
We therefore hold that the trial court properly rendered summary
judgment as a matter of law on Rimkus’s claim for attorney’s fees.

          We
overrule Crane’s second issue.

Conclusory Summary Judgment Affidavits

          In
his third issue, Crane contends that Rimkus’s affidavits describing its
professional services charges and the reasonableness of its attorney’s fees
were conclusory and did not constitute proper summary-judgment evidence.

          Affidavits
containing conclusory statements unsupported by facts are not competent
summary-judgment evidence.  Prime Prods., Inc. v. S.S.I. Plastics, Inc.,
97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (quoting Aldridge v. De Los Santos, 878 S.W.2d
288, 296 (Tex. App.—Corpus Christi 1994, writ dism’d w.o.j.)); Rizkallah v. Conner, 952 S.W.2d 580, 587
(Tex. App.—Houston [1st Dist.] 1997, no pet.) (“A conclusory statement is one
that does not provide the underlying facts to support the conclusion.”).  An affidavit must be factual—mere conclusions of the affiant lack
probative value.  Prime Prods., 97 S.W.3d at 637; see
also Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996)
(“[Conclusory affidavits are neither] credible nor susceptible to being readily
controverted.”).  However, a party moving
for summary judgment is not required to provide supporting affidavits as
summary-judgment evidence.  See Tex.
R. Civ. P. 166a(a) (“A party seeking to recover upon a
claim . . . may . . . move with or
without supporting affidavits for a summary judgment in his favor upon all or
any part thereof.”).

          Here,
Crane contends that the “only evidence supporting the reasonableness of time
charged for [Rimkus’s] various activities is the global and conclusionary [sic] statement submitted by an
interested party, Ralph S. Graham.”  Graham
stated that Crane owed Rimkus $3,463.75, and he averred that this amount was
“just and true, due and owing, and all just and lawful offsets, payments and
credits have been allowed.”  Crane argues
that this statement “does not provide evidence that the time spent on the
various activities was either just or fair.” 
As additional summary-judgment evidence, however, Rimkus attached the
Terms and Conditions, which set forth the hourly rate of each Rimkus employee
and the fee schedule for “fixed expenses,” and the unpaid invoice.  Crane cites to no authority holding that this
evidence is insufficient to establish a breach of contract plaintiff’s
entitlement to summary judgment.

          Crane
further contends that Richard Judge’s affidavit regarding Rimkus’s attorney’s
fees is defective because it “fails to break down attorney’s fees by showing
how much time was allegedly spent on what legal functions by the attorney or
his staff.”

          When
proving reasonable and necessary attorney’s fees, “[t]here is no strict
requirement that the work of an attorney be expressed in terms of hours spent;
the amount of work expended can be proved by alternative methods, including
evidence of what tasks were undertaken on behalf of the client.”  Brighton
Homes, Inc. v. McAdams, 737 S.W.2d 340, 344 (Tex. App.—Houston [14th Dist.]
1987, writ ref’d n.r.e.) (holding evidence sufficient to support fee award when
attorney did not state specific number of hours worked, but testified regarding
specific actions taken and attorney’s billing rate); Hugh Wood Ford, Inc. v. Galloway, 830 S.W.2d 296, 298 (Tex.
App.—Houston [14th Dist.] 1992, writ denied) (holding attorney’s fees award
sufficient, even though attorney kept no time records, when testified in detail
regarding work performed and time estimate was not contradicted by opposing
party); see also Town & Country
P’ship v. Frontier Leasing Corp., No. 01-07-00555-CV, 2009 WL 723991, at *4
(Tex. App.—Houston [1st Dist.] Mar. 19, 2009, no pet.) (applying Brighton Homes and Hugh Wood Ford and holding affidavit sufficient, despite no
itemized statement of services and charges, because affiant “detailed the
nature and extent of the services rendered”).

          Here,
in his summary judgment affidavit, Richard Judge opined that $8,269.25 was a
reasonable and necessary amount for Rimkus’s attorney’s fees.  Judge stated the billing rates for the
attorneys and the legal assistants who worked on the case, as well as the
number of hours each person worked.  Although
Judge did not specify the number of hours each person expended on each
particular task, he did state in detail the tasks performed on behalf of
Rimkus.  Judge noted that the “majority
of [the firm’s] billable hours have been spent in response to the various
actions and filings by [Crane] in this litigation.”  Judge specifically listed the eight factors
from Arthur Andersen & Co. v. Perry
Equipment Corp., 945 S.W.2d 812, 818 (Tex. 1997), used when considering the
reasonableness of an attorney’s fees award and stated that he was familiar with
the usual billing rates of attorneys and legal assistants in Harris
County.  We conclude that Judge’s
affidavit sufficiently established the reasonableness and necessity of the
attorney’s fees incurred by Rimkus, and therefore the trial court correctly
rendered summary judgment in favor of Rimkus.

          We
overrule Crane’s third issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.











[1]
          Rimkus specifically abandoned
its suit on an account and quantum meruit causes of action in its summary
judgment motion.





[2]
          One of the only sentences in
Crane’s affidavit that the trial court did not strike states that, “[t]he
contract included a material representation that billing for work done will be
on a monthly basis.”  Crane did not
address any of the Mustang Pipeline
factors in his summary judgment response, affidavit, or on appeal.  His conclusory statement that this provision
was material is, without more, no evidence that Rimkus materially breached the
contract.

 





[3]
          In his Issues Presented, Crane
also contends that he submitted summary-judgment evidence and raised a fact
issue on the affirmative defense of failure of consideration.  Crane, however, presents no arguments or
authorities to support this contention, and we therefore hold that he has
waived this argument on appeal.  Tex. R. App. P. 38.1(i).  Crane also contends that Rimkus materially
breached the contract by failing to investigate a manufacturing defect when he
specifically requested Rimkus to investigate this aspect.  As Rimkus points out, the trial court struck
the portion of Crane’s summary judgment affidavit in which he states that he
was “primarily interested” in learning if a manufacturing defect caused the
accident but that Rimkus never investigated this possibility, and Crane
produced no other summary judgment evidence reflecting this agreement.  See Little v. Needham, 236 S.W.3d 328,
331 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that appellate court should not consider portions of
summary judgment affidavit struck by trial court when appellant does not
challenge ruling on appeal).  Crane also
contends that fact issues exist regarding whether Rimkus materially breached by
“fail[ing] to submit a report” on its findings. 
Crane produced no summary-judgment evidence regarding this obligation,
and he does not present arguments on appeal regarding the materiality of this
alleged breach.





[4]
          To the extent Crane objects to
the affidavits of Ralph Graham, Rimkus’s Senior Vice President, and Richard
Judge, one of Rimkus’s attorneys, on the ground that they were made by
interested witnesses, we note that “affidavits of interested witnesses present
a defect of form requiring an objection in the trial court.”  See
Ahumada v. Dow Chem. Co., 992 S.W.2d 555, 562 (Tex. App.—Houston [14th
Dist.] 1999, pet. denied).  Because the
record reflects that Crane did not raise this objection in the trial court, he
has waived this complaint on appeal.  Id.